RUDE v. MUSKEGON COUNTY BUILDING AUTHORITY.

1. Counties—County Building Authority—Separate Entity—
   Board of Supervisors.
   County building authority as provided for by statute is not
   the alter ego of the county, since, although it is in a sense
   a county-wide municipal corporation, it is limited in its
   scope of activities and is intended to be a separate body from
   the board of supervisors (CL 1948, § 123.951 *et seq.*).

2. Same—Buildings—Record.
   Finding of trial court in suit, involving validity of county
   building authority's bond issue, that there was a compelling
   need for a building to house the welfare administration of
   the county *held*, supported by record presented (CL 1948,
   § 123.951 *et seq.*).

3. Same—Pledge of Full Faith and Credit—County Building
   Authority—Revenue Bonds—Construction of Statutes.
   Proviso of statute, permitting the establishment of a county
   building authority, that bonds issued by the authority were
   payable solely from the revenues of the property is con-
   strued as the reasonable annual rental for an absolute ne-
   cessity but not a pledge of the full faith and credit of the
   county (CL 1948, § 123.961).

4. Same—County Building Authority—Increase of Considera-
   tion.
   Statutory power conferred upon county building authority to
   increase consideration specified in contract for use of build-
   ings if necessary in order to provide funds to meet its
   obligations is construed as permitting such increase only
   up to a reasonable amount, if below what is reasonable, and
   if necessary to meet its debts (CL 1948, § 123.958).

---

References for Points in Headnotes

[3] As to obligations payable from a special fund, see 14 Am Jur,
    Counties § 64; 38 Am Jur, Municipal Corporations § 468 *et seq.*
[5] 3 Am Jur, Appeal and Error § 985.
[9] 14 Am Jur, Costs § 91.

5. COURTS—LAW OF THE CASE.

The determination of the Supreme Court on the facts of a case and pertinent statutes under the Constitution stands as the law of such case.

6. COUNTIES—BUILDING CONSTRUCTION AND REPAIR—COUNTY BUILDING AUTHORITY—CONSTITUTIONAL LAW.

The assumption by a county building authority of a debt, repayable so far as the county is concerned only from reasonable rents necessary for the county to pay, is not a raising of the entire sum in the county within 1 year so as to exceed 1/10 of 1 mill as limited by the Constitution for county building construction or repair (Const 1908, art 8, § 10; CL 1948, § 123.951 *et seq.*).

7. SAME—COUNTY BUILDING AUTHORITY—BONDS—RENT CHARGEABLE COUNTY—PARTY TO BONDS.

County building authority's power to charge rent for use of its buildings is limited to charging not more than a maximum rental that is reasonable and the authority is required to be the sole obligor on its revenue bonds, lest the lease which it enters into with county exceed limit of county's permissible indebtedness without a vote of the electors (Const 1908, art 8, § 10; CL 1948, § 123.951 *et seq.*).

8. STATUTES—EXTRA SESSION—GOVERNOR'S MESSAGE.

Holding of decree that subject matter of legislation construed was properly contained within scope of governor's message to the legislature convened in extra session and that procedure enacting such statute was proper is affirmed (Const 1908, art 5, § 22; CL 1948, § 123.951 *et seq.*).

9. COSTS—PUBLIC QUESTION—COUNTY BUILDING AUTHORITY—BONDS.

No costs are allowed in suit to enjoin issuance of bonds by county building authority, a question of public importance being involved (CL 1948, § 123.951 *et seq.*).

Appeal from Muskegon; Fox (Noel P.), J. Submitted October 16, 1953. (Docket No. 67, Calendar No. 45,965.) Decided November 27, 1953.

Bill by Arthur M. Rude against Muskegon County Building Authority and County of Muskegon to restrain issuance of bonds. Decree for plaintiff. Defendants appeal. Reversed.

*Arthur M. Rude, in propria persona.*

*Berry, Stevens & Moorman* (*Claude H. Stevens* and *Milton M. Thompson,* of counsel), for defendants.

Reid, J. Plaintiff filed the bill of complaint herein, to enjoin the Muskegon County Building Authority (herein referred to as the authority) from exercising certain powers, more particularly, issuance of $200,-000 of bonds for acquiring building and site for welfare functions; also for a declaration of rights. From a decree for plaintiff, the defendants appeal.

Defendant authority is a body corporate created under PA 1948 (1st Ex Sess), No 31 (CL 1948, § 123.951 *et seq.* [Stat Ann 1951 Cum Supp § 5.301 (1) *et seq.*]). Section 1 of the act provides that any county or city may incorporate an authority for the purpose of acquiring, et cetera, buildings and sites for the use of the county or city.

Section 8 (CL 1948, § 123.958) provides:

"The authority and any incorporating unit or units shall have power to enter into a contract or contracts whereby the authority will acquire property contemplated by the terms of this act and lease the same to the incorporating unit or units for a period not to exceed 40 years. *The consideration specified in such contract for such use shall be subject to increase by the authority if necessary in order to provide funds to meet its obligations.*" (Italics supplied.)

Plaintiff claims that in effect the authority is the alter ego of the county and bound by all the limitations in the State Constitution as to the county in the raising of moneys, expenditure of moneys and pledging the faith and credit of the county. Plaintiff's claim in that regard is based on the following reasons: First, because the articles of incorporation of the authority may be amended at any time by

the board of supervisors; second, because of the delegation to the authority of the right to proceed with condemnation proceedings and issue self-liquidating bonds similar to the right of the board of supervisors so to do; third, because the authority may build buildings for certain county purposes; fourth, because the corporate limits of the authority are the same as the county's; fifth, because the board may provide the initial incorporating and operation costs of the authority and may eventually take over under certain conditions, the buildings built by the authority. In practical effect, the trial court held with these contentions of plaintiff.

Defendants cite *Gledhill* v. *Fisher & Company*, 272 Mich 353 (102 ALR 1042); *Finley* v. *Union Joint Stock Land Bank of Detroit*, 281 Mich 214; *John A. Parks Company* v. *General Discount Corporation*, 294 Mich 316; and *Bourne* v. *Muskegon Circuit Judge*, 327 Mich 175, in opposition to the finding of alter ego. Without considering it necessary to set forth an analysis of those cases, we are satisfied to overrule the finding as to alter ego. While the authority is in a sense a county-wide municipal corporation, it is limited in its scope of activities even inside of county affairs. The legislature in enacting the statute providing for the creation of an authority evidently intended it to be a separate body from the board of supervisors. The board of supervisors in this case evidently intended the authority to carry on specific activities with which from then on, the board need not necessarily directly concern itself.

PA 1948 (1st Ex Sess), No 31, authorized the board of supervisors to incorporate the authority. The trial court found, "There is a present, compelling need for a building to house the welfare administration of Muskegon county." We find nothing in the record to indicate the contrary of this statement

of the trial judge, and sufficient on which to base the statement.

The authority, at a meeting held August 1, 1952, resolved to retain an architect to draft plans and an attorney to prepare a lease and to take other steps to acquire a building to be leased to the county for use in its welfare functions and to issue and sell revenue bonds of about $200,000 for such purposes.

Both plaintiff and defendants cite *Walinske v. Detroit-Wayne Joint Building Authority* (city-county authority incorporation under section 2 of the act in question in this case), 325 Mich 562. The lease in the *Walinske Case* had not yet been prepared when that case was heard, so that its terms were not before the court. In the instant case also, the lease has not as yet been signed so far as the record discloses.

Defendants in the instant case argue respecting the *Walinske Case,* "These documents [*i.e.,* an interim contract and the articles of incorporation] made it plain that the lease would have to extend beyond the last bond maturity, that the rental would have to be *sufficient to pay off the bonds,* and that the conveyance of the property to the incorporators on retirement of the bonds was mandatory." Defendants also argue, "The foregoing argument [referring to their own argument] should demonstrate that the proposed bond-lease arrangement would create no county indebtedness *in the constitutional sense.*" (Italics in both quotations supplied.)

We infer that the authority argues that it has the lawful right and that it intends by its acts to create a situation by which the county is to be bound to pay the indebtedness about to be incurred of $200,000 regardless of the value to the county of the rental use to be provided in the building or buildings proposed to be acquired or built.

Our State Constitution (1908), art 8, § 10, provides:

"The board of supervisors of any county may in any 1 year levy a tax of 1/10 of 1 mill on the assessed valuation of said county for the construction or repair of public buildings or bridges, or may borrow an equal sum for such purposes; and, in any county where the assessed valuation is less than 10,000,000 dollars, the board may levy a tax or borrow for such purposes to the amount of 1,000 dollars; but no greater sum shall be raised for such purposes in any county in any 1 year, unless submitted to the electors of the county and approved by a majority of those voting thereon."

In the *Walinske Case,* we say, page 581:

"The authority, not the city and county, is to pay for and erect the proposed building, and is to be the sole obligor on the proposed revenue bonds. The city and county will not pledge their full faith and credit, but they merely agree to pay over a term of years a reasonable annual rental for an absolute necessity the same as they would for any other services."

These words are not an exact recital of express statements in the contract in the *Walinske Case* nor exact quotations from the governing statute, but are a ruling by this Court construing the statute and declaring the lawful situation of the parties. It is to be noted that the statute in section 11 (CL 1948, § 123.961 [Stat Ann 1951 Cum Supp § 5.301 (11)]), contains the proviso:

"That such bonds shall be payable solely from the revenues of such property, which revenues shall be deemed to include payments made under any lease or other contract for the use of such property."

When we say in the *Walinske Case,* page 581, "The city and county will not pledge their full faith and credit, but they merely agree to pay over a term of years a *reasonable* annual rental for an absolute ne-

cessity the same as they would for any other services" (italics supplied), we are by judicial construction setting forth the words, "reasonable annual rental for an absolute necessity" as a construction of what is meant in the statutory proviso last above mentioned by the words, "revenues of such property."

It is further to be understood, so far as concerns the instant case, that the words in section 8 of the statute, "The consideration specified in such contract for such use shall be subject to increase by the authority if necessary in order to provide funds to meet its obligations," do not mean that the authority can under any circumstances increase the rent beyond what would be reasonable, but can raise its rent charges up to a reasonable amount if below what is reasonable and if necessary to meet its obligations and may continue the lease if necessary to meet its debts.

What we said in the *Walinske Case* stands as the law governing that case. We decide the instant case on the facts of this case and pertinent statutes under the Constitution and our decision herein is to stand as the law of this case.

In the instant case, the trial court held:

"Under the admitted facts in this case, in 1952, Muskegon county had an assessed valuation of $223,257,936. One-tenth of 1 mill, in the case of Muskegon county, is $22,235.79 [corrected from the record to $22,325.79]. A proposed building in the approximate amount of $200,000 would violate the provisions of Michigan State Constitution (1908, art 8, § 10). Therefore, the creation of a corporation under the provisions of PA 1948 (1st Ex Sess), No 31, § 4, to accomplish this purpose, is invalid."

The last portion of Constitution 1908, art 8, § 10, above quoted is, "But no greater sum shall be raised for such purposes in any county in any 1 year, unless

submitted to the electors of the county and approved by a majority of those voting thereon." If Muskegon county should bind itself to pay in a contract or lease more than a reasonable rental, in a total amount of $200,000, this would amount to a plain evasion of the last cited clause in article 8, § 10 of the Constitution, because the county in the year in which the county signed such a lease would make itself liable for that total amount on the county's faith and credit, and by that means *raise* $200,000 in that year.

We do not consider that the assumption by the authority of a debt of $200,000 repayable so far as the county is concerned only from reasonable rents necessary for the county to pay, is a *raising* of $200,000 *in the county* within the meaning of article 8, § 10.

In order not to contravene the provisions of article 8, § 10, the lease contemplated between the parties shall provide for a reasonable rental only, without right on the part of the authority to require more rent than what is or shall be reasonable rental, and that the authority is to be the sole obligor on the bonds to be issued for the $200,000.

We affirm only so much of the decree of the trial court as holds that the subject matter of PA 1948 (1st Ex Sess), No 31, § 1 was properly contained within the scope of the governor's message of April 16, 1948, and that the procedure followed in enacting such legislation was proper and not in violation of article 5, § 22 of the State Constitution. In all other particulars, the decree appealed from is reversed. A decree may be entered in accordance with this opinion. No costs, a question of public importance being involved.

Dethmers, C. J., and Adams, Carr, Bushnell, Sharpe, and Boyles, JJ., concurred with Reid, J.

Butzel, J., concurred in the result.