STATE *v.* DOYLE & ASSOCIATES, INC.

1. COUNTIES—PURCHASE OF MEDICAL FACILITY—RENTS.

Lease of land from defendant county to defendant corporate builder and so-called lease agreement running to the county from the builder whereby county was to make monthly payments and expenses such as taxes and assessments, public utility charges, and insurance premiums for medical facility and obtain title thereto at the end of 10 years *held,* to constitute a purchase of the building, notwithstanding the payments were labelled as rentals, where evidence shows that a reasonable "rental" solely for occupancy, and not acquisition, would be much less.

2. SAME—MEDICAL FACILITY—DEBT LIMIT.

The purchase by a county of a building to accommodate a medical facility for which monthly payments were to be made during a 10-year period constituted an incurring of indebtedness, a borrowing of money subject to debt limitations set forth by the Constitution and statutes (Const 1908, art 8, § 10; CL 1948 and CLS 1961, § 131.1 *et seq.*; § 331.151 *et seq.*; § 400.1 *et seq.*).

3. SAME—CONTRACTS FOR MEDICAL FACILITY—DEBT LIMIT.

Contractual arrangement whereby county agreed to purchase building for medical facility over a 10-year period without approval of the electorate for exceeding the limit as provided for by the Constitution then in effect, *held,* invalid (Const 1908, art 8, § 10; CL 1948 and CLS 1961, § 131.1 *et seq.*; § 331.151 *et seq.*; § 400.1 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 32 Am Jur, Landlord and Tenant § 299 *et seq.*
[2, 3] 14 Am Jur, Counties §§ 62, 64.
[4] 32 Am Jur, Landlord and Tenant §§ 44, 48.
    17 Am Jur 2d, Contracts § 445.
[5] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

4. SAME—INVALID CONTRACT—MEDICAL FACILITY—VALID GROUND
   LEASE—NEW CONTRACT.

   Suit to enjoin payment of county funds under lease agreement
   running to county from builder of medical facility, invalid
   when made, is remanded to circuit court with instructions to
   retain jurisdiction until a new agreement can be worked out
   between the parties, no longer subject to certain constitutional
   limitations, where builder is in possession of valid ground lease
   of premises, the structure is completed and presently occupied
   by the county, there is a public interest in the continued avail-
   ability of the facility involved, and the builder is not entitled
   to recovery under the invalid lease agreement or in *quantum
   meruit* (Const 1908, art 8, § 10; Const 1963, art 7, § 11; CL
   1948 and CLS 1961, § 131.1 *et seq.*; § 331.151 *et seq.*; § 400.1
   *et seq.*).

5. COSTS—PUBLIC QUESTION—INJUNCTION—COUNTIES—MEDICAL FA-
   CILITY.

   No costs are allowed on appeal in suit to enjoin county from pay-
   ing for medical facility on ground of noncompliance with per-
   tinent provisions of Constitution and statutes, public questions
   being involved (Const 1908, art 8, § 10; CL 1948 and CLS
   1961, § 131.1 *et seq.*; § 331.151 *et seq.*; § 400.1 *et seq.*).

Appeal from Berrien; Sweet (Lucien F.), J., pre-
siding. Submitted May 7, 1964. (Calendar No. 69,
Docket No. 50,464.) Decided January 4, 1965.

Complaint by the People of the State of Michigan
against Doyle & Associates, Inc., a Michigan corpo-
ration, and the County of Berrien, its Board of
Supervisors and certain individual members there-
of, for injunction restraining fulfillment of lease
agreements under which a building for the care of
the sick and aged was to be financed. Ragnar Ben-
son, Inc., an Illinois corporation, general contractor
on the construction, intervened as party defendant.
Judgment for defendants. Plaintiff appeals. Re-
versed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Maxine Boord Virtue,*

*David P. Van Note,* and *Gerald O'Reilly,* Assistant Attorneys General, for plaintiff.

*Joseph N. Low* and *Lee Boothby,* for defendants Doyle & Associates, Inc., and Ragnar Benson, Inc.

*Ronald H. Lange,* for defendants County of Berrien, its Board of Supervisors and certain individual members thereof.

SOURIS, J.   Late in 1962 the defendant county of Berrien entered into a series of transactions with defendant Doyle & Associates, Inc., whereby Doyle constructed and equipped, on land owned by the county, a large building suitable for the care of sick or aged people.[1]  As modified by stipulation of the contracting parties made on the record in open court by their attorneys, the county and Doyle agreed that the county would occupy and use the building and equipment for which it would pay Doyle monthly a specified sum and, as well, pay all other operating expenses and costs which normally are payable by the owner of a building, and at the end of 10 years, title to the building and equipment would be in the county free and clear of any incumbrances. The agreement was evidenced by a ground lease of the land on which the building was constructed running to Doyle from the county and an agreement, labeled a "lease agreement", running to the county from Doyle.

Shortly after construction commenced, the attorney general filed this suit for injunctive and other relief claiming the transactions were void because they constituted the incurring of debt by the county in excess of the limitation then contained in article

---

[1] The new building abutted upon, and shared a common wall with, the county's hospital and infirmary.  Plans in evidence indicate there are openings in the common wall through which there is access to each building from the other.

8, § 10, of the Constitution of 1908[2] and because the county had failed to comply with statutory requirements relating to debt financing by a county, PA 1943, No 202 (CL 1948 and CLS 1961, § 131.1 *et seq.* [Stat Ann 1958 Rev and Stat Ann 1963 Cum Supp § 5.3188(1) *et seq.*]), and operation by a county of a medical care facility, PA 1939, No 280, as amended (CL 1948 and CLS 1961, § 400.1 *et seq.*[3] [Stat Ann 1960 Rev and Stat Ann 1963 Cum Supp § 16.401 *et seq.*]), or a hospital, PA 1913, No 350, as amended (CL 1948 and CLS 1961, § 331.151 *et seq.* [Stat Ann 1956 Rev and Stat Ann 1963 Cum Supp § 14.1131 *et seq.*]). A restraining order was issued *ex parte* upon filing of the complaint, forbidding further construction, performance of any of the agreements between the defendants· or payment of any of the county's funds to Doyle. Three days later, after hearing, the chancellor modified the restraining order, but only to permit continuation of construction. A week or so later, after hearing on the order to show cause which had been issued with the restraining order, a preliminary injunction was granted enjoining Doyle from furnishing medical or hospital care or medical facilities to or for the county and enjoining the county from payment of any of its funds for any purpose related to the construction or use of the building under construction. In granting the preliminary injunction in such fash-

---

[2] Article 8, § 10, of the Constitution of 1908 read as follows:

"Sec. 10. The board of supervisors of any county may in any one year levy a tax of one-tenth of one mill on the assessed valuation of said county for the construction or repair of public buildings or bridges, or may borrow an equal sum for such purposes; and, in any county where the assessed valuation is less than ten million dollars, the board may levy a tax or borrow for such purposes to the amount of one thousand dollars; but no greater sum shall be raised for such purposes in any county in any one year, unless submitted to the electors of the county and approved by a majority of those voting thereon."

[3] CL 1948, §§ 400.55, 400.66, amended by PA 1962, No 195.— Reporter.

ion that construction of the building could continue, the chancellor expressly noted that, if the corporate defendant continued the project, it would act at its own peril. The building was completed shortly after hearing on the merits. The chancellor denied the relief prayed for by the attorney general and entered a decree dismissing the complaint, from which decree this appeal has been taken. Pending the appeal, the county has occupied the building and has operated it as a hospital pursuant to a provisional certification therefor by the State health commissioner executed in accordance with a stipulation of the parties.

We cannot read the documents executed by the county and Doyle as other than an agreement for the construction and equipping of a medical facility by Doyle and its purchase by deferred payments by the county. By such agreement the county has incurred a debt in the total amount of the monthly sums it has agreed to pay to Doyle over a 10-year period plus the other expenses it has assumed to pay, such as taxes and assessments, charges for utilities, and insurance premiums. Expert appraisers called to testify by both plaintiff and the defendants agreed that the monthly payments required to be made by the county were reasonable in amount in the sense that, *assuming* a total cost to Doyle of $1,900,000 for construction of the building and purchase of its equipment, the aggregate of the monthly payments made over the 10-year period agreed upon would provide Doyle with complete repayment of its investment and a return thereon of about 6% per annum, which return the experts agreed would generally be considered adequate by prudent investors, considering the high credit rating of the county and low risk involved. Labeling the monthly payments required to be made by the county as "rentals" does not affect their essential nature as purchase pay-

ments. The experts, in reaching their conclusions that the monthly payments were reasonable in amount, did so with full understanding that the county would at the end of the 10-year period own the building and its equipment.

It is of interest to note that one of the experts concluded that in the event Doyle retained a reversionary interest in the building upon expiration of the county's 10-year "lease", then a reasonable "rental" (from a prudent investor's viewpoint) for the county's occupancy during its 10-year term would be very substantially less than the monthly payments agreed to be paid depending upon the length of the reversionary term. The record made demonstrates conclusively that the agreement was nothing less than an agreement by the county to purchase a fully equipped building which Doyle undertook to build upon the county's land, payment for which was to be made by the county over a 10-year period. The ground lease and lease-back agreement were devices of convenience to secure Doyle and to permit it to arrange financing for the project. It is not an unfamiliar practice in private commercial affairs nor is it unknown in government-purpose financing. See Magnusson, "Lease-Financing by Municipal Corporations as a Way Around Debt Limitations", 25 Geo Wash L Rev 377 (1957).

That the county undertook to incur an indebtedness cannot be questioned seriously. It agreed to make monthly payments and to pay other charges and expenses for a 10-year period certain during which time it forswore termination of the agreement. It pledged it would budget sufficient funds each year for the monthly payments required to be made and, indeed, it pledged to levy sufficient taxes and to collect sufficient revenues from other sources to make such payments. In short, it assumed an

indebtedness to Doyle repayable in installments over a 10-year term.

As this Court said in *School District No. 9 v. McLintock,* 255 Mich 197, at 201, to incur indebtedness is to borrow money. The constitutional provision quoted in footnote 2, *supra,* limited the borrowing power of counties to one-tenth of one mill on their assessed valuation, a maximum limitation in this case far below the indebtedness assumed by the county for each year to · say nothing of the county's total obligation for the 10-year term. The record discloses that the electors of the county did not approve exceeding the stated limit, as the con-stitutional provision expressly authorized they could, and, in fact, it appears that the county's electors several years earlier had rejected a financing proposal submitted to them for acquisition of similar facilities.

In *Putnam v. Grand Rapids,* 58 Mich 416, this Court invalidated a contract entered into by a city for the time purchase of street lighting equipment for an aggregate sum in excess of the city's charter limitation upon its borrowing power. This Court read the charter provision, in its essential meaning identical to the constitutional provision with which we now are concerned, to prohibit the creation of future responsibility for annual current expenses. See, also, 1 OAG 1955, p 599, No 2,273. We conclude that the agreement between the county and Doyle is invalid, the county lacking authority of its electors to incur such an indebtedness in excess of the limitation upon borrowing imposed by article 8, § 10, of the Constitution of 1908 upon counties in the absence of their electorate's approval. Thus, we are required to reverse and remand for further proceedings.

In the peculiar circumstances of this case our reversal and remand should not be without some

indication as to what further proceedings may be had. The lease-back agreement which imposed the excessive obligation upon the county is void. This being so, Doyle may not claim compensation under it, nor, under the settled law of this State, may Doyle make claim against the county in *quantum meruit* for the facility it erected upon the leased ground. See, *inter alia, Stratton* v. *City of Detroit,* 246 Mich 139.

The ground lease, however, remains valid, for while by its terms it contemplated the erection of a medical facility and a lease-back agreement to the county, its validity was not made dependent in any way upon the successful execution of such projects. Indeed, the ground lease provides for separate consideration in the form of annual payments of $1,150 by Doyle to the county. Thus, while Doyle has no rights it may enforce against the county arising from the invalid lease-back agreement nor may it invoke *quantum meruit* principles to recover its expenditures, it does have a completed and fully equipped building on land validly leased to it. It is a building the county presently is occupying and in the continued availability of which the public has an interest. Furthermore, since decision below our Constitution of 1963 has become effective. That Constitution does not contain any limitation upon counties such as was in article 8, § 10 of the Constitution of 1908.[4] In view of the significant constitutional changes which now free the county and Doyle to contract as they attempted unsuccessfully to do and considering the public's interest, and Doyle's, in the continued use of the facilities involved in this litigation as a publicly operated hospital facility, this

---

[4] It does, however, now contain the following proscription:

"No county shall incur any indebtedness which shall increase its total debt beyond 10 percent of its assessed valuation." Const of 1963, art 7, § 11.

cause shall be remanded to the chancellor with instructions to retain jurisdiction until a new agreement can be made between the county and Doyle in compliance with existing law and to render such assistance as may be necessary to effectuate such agreement. Failing such agreement the chancellor shall entertain such cross-claim or cross-claims as the county and Doyle may be advised to make. GCR 1963, 203.3.

We do not decide other claims made by the attorney general in support of his request for injunctive relief in view of the disposition we make of this appeal. However, on remand, the chancellor shall, by order if necessary, compel compliance by the county and its appropriate agencies with all applicable statutory requirements for approval, licensing, or certification of the building and its use.

Reversed and remanded for further proceedings in accordance herewith. No costs, there being public questions involved.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred.